UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BUTSINAS,

     Petitioner,                          Civil No. 19-cv-11789
                                                 Hon. Matthew F. Leitman
v.

GEORGE STEPHENSON,[1]

     Respondent.

_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) GRANTING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner John Butsinas is a state inmate in the custody of the Michigan

Department of Corrections.  In 2015, a jury in the Macomb County Circuit Court

convicted Butsinas of two counts of witness intimidation in violation of Mich.

Comp. Laws § 750.122(7)(b).  On June 17, 2019, through counsel,[2] Butsinas filed a

---

[1] The Court amends the case caption to reflect that Butsinas' current custodian is George Stephenson, the warden at the Macomb Correctional Facility where Butsinas is currently incarcerated. *See Edwards Johns,* 450 F.Supp.2d 755, 757 (E.D. Mich. 2006); *see also* Rule 2(a), 28 foll. U.S.C. § 2254.

[2] Butsinas was initially represented in this action by the State Appellate Defender Office.  On December 9, 2020, Butsinas asked the Court to appoint him substitute counsel. (*See* Mot., ECF No. 12.)  The Court granted that motion and subsequently appointed attorney John R. Minock to represent Butsinas. (*See* Order, ECF No. 13.)

1

petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  The Court has carefully reviewed the petition and concludes that Butsinas is not entitled to federal habeas relief. Therefore, for the reasons explained below, the Court **DENIES** Butsinas' petition.  However, it **GRANTS** Butsinas both a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

## I

## A

In 2014, Butsinas was charged in two criminal cases.  In one of the cases, he faced five counts of first-degree criminal sexual conduct, and in the other case, he was charged with two counts of witness intimidation.  The charges in the two cases were eventually joined together and were tried in a single trial.  The Michigan Court of Appeals described the relevant facts as follows:

> For several years, defendant lived with his girlfriend, Elizabeth Smith, and her three daughters. The family first lived in a mobile home and then in a house on Crocker Street. In 2013, Smith's middle daughter, Kr, reported to a friend that defendant had sexually abused her throughout the previous four years. At the time of this disclosure, Kr was 12 years old. When interviewed by the police, Kr claimed that defendant had repeatedly engaged in forcible penile-vaginal penetration with her since she was eight years old (2008). Following this disclosure, Smith accompanied her daughter to the hospital. But Kr refused to allow a doctor to conduct a sexual assault examination, and no examination was ever performed.

[….]

[At trial, witness] Margaret Dunn testified that in 2013, she contacted [Child Protective Services] to report defendant's alleged sexual abuse of Kr. She accompanied Smith and Kr to the hospital. Margaret asserted that she could hear defendant's voice over a cell phone while he spoke to Smith at the hospital. Defendant continually asked Smith who had contacted CPS and threatened, "[A]s soon as I find out who called and told, I will fucking kill them." Margaret and her husband, Jason Dunn, described that defendant subsequently stalked their home. Jason further testified that defendant asked him to help "make all this, the allegations ... go away." William Marrow, defendant's close friend, testified that defendant asked him to assist him in various nefarious acts designed to convince Smith and Kr to drop the charges.

[….]

On one of the nights that defendant revved his car engine outside the Dunns' home, Jason Dunn went outside to confront him. Defendant had his phone out and was "videotaping [the Dunns'] home and all of [their] cars." When asked why he was doing that, defendant told Jason that the Dunns "messed with the wrong people this time, and that [they] were manipulators and [they] would not take other people's kids this time." Jason called the police, who eventually apprehended defendant and impounded his car. According to both Jason and Margaret, defendant again had no reason to be at the Dunn house.

*People v. Butsinas*, 2018 WL 521819, at ** 1-3 (Mich. Ct. App. Jan. 23, 2018).

A jury convicted Butsinas on all charges. *See id.* at *1. Butsinas then filed a claim of appeal in the Michigan Court of Appeals. That court (1) reversed the first-degree criminal sexual conduct convictions on the ground that the prosecutor had

3

withheld potentially exculpatory evidence but (2) affirmed Butsinas' witness intimidation convictions. *See id.*  As to witness intimidation, the Michigan Court of Appeals held that Butsinas could not be convicted of that offense based upon his alleged comments during the telephone conversation that Margaret Dunn said she overheard – *i.e.*, the call in which Butsinas allegedly told Smith that he would kill the person who reported him to CPS – but the Court held that he could be convicted based upon his two appearances at the Dunns' house. *See id*. at ** 2-3.

Butsinas filed an application for leave to appeal in the Michigan Supreme Court.  That court denied review. *See People v. Butsinas*, 920 N.W.2d 609 (2018).

## B

On June 17, 2019, Butsinas filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  In the petition, Butsinas sought relief on the following grounds:

> I. Petitioner was denied a fair trial by the trial court's decision, over objection, to grant joinder [of the charges against Butsinas], which resulted in substitute counsel (not counsel of choice), on the added counts.

> II. Petitioner was denied his right to the effective assistance of counsel by his attorneys' failure to use significant impeachment material.

> III. The evidence of witness intimidation is insufficient, denying defendant due process of law.

> IV. Petitioner was denied a fair trial by the admission of highly inflammatory, irrelevant testimony; in the

4

alternative, trial counsel was ineffective in failing to object
on the right grounds.

Respondent filed an answer to the petition on July 31, 2020. (*See* Resp., ECF

No. 9.)  As part of the response, Respondent argued that a portion of Butsinas' first

claim, which alleged the denial of his right to counsel of choice, and his entire fourth

claim were unexhausted. (*See id.*)  After several discussions between this Court and

the parties, Butsinas withdrew the unexhausted claims from his petition. (*See* Notice,

ECF No. 19).

Thus, the claims that remain before the Court are: (1) the claim that the state

trial court violated Butsinas' due process rights by joining for trial the criminal

sexual conduct charges and the witness intimidation charges; (2) the claim that

Butsinas was denied the right to effective counsel when his trial attorney failed to

use certain impeachment material; and (3) the claim that the evidence was

insufficient to prove beyond a reasonable doubt that Butsinas was guilty of the

witness intimidation charges.  The Court provides more detail about the remaining

claims below.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires federal courts to uphold state court adjudications on the merits unless the

state court's decision (1) "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Here, there is some uncertainty as to whether AEDPA applies to all of Butsinas' claims because there is strong reason to believe that the Michigan Court of Appeals did not decide all three claims on the merits. Indeed, that court never mentioned – nor even hinted that it was aware of – Butsinas' misjoinder and ineffective assistance of counsel claims. And while there is a rebuttable presumption that the Michigan Court of Appeals did decide those claims on the merits, *see Johnson v. Williams*, 568 U.S. 289, 301 (2013), that presumption may be overcome where, as here, there is no indication whatsoever in the Court of Appeals' decision that it recognized, or intended to decide, the misjoinder and ineffective assistance of counsel claims. *See id.* at 302-03. Finally, while Butsinas seems to concede that these two claims *are* subject to review under AEDPA (*see* Pet., ECF No. 1, PageID.15, 24), the Court has an independent duty to determine the appropriate governing standard. *See*, *e.g.*, *Brown v. Smith,* 551 F.3d 424, 428 n. 2 (6th Cir. 2008), *overruled on other grounds by Cullen v. Pinholster,* 563 U.S. 170 (2011) ("[A] party cannot 'waive'" the governing legal standard under AEDPA "by failing

6

to argue it"); *Worth v. Tyler*, 276 F.3d 249, 262 n.4 (7th Cir. 2001) ("Defendants also contend that [plaintiff] waived any challenge to the standard of review. However, the court, not the parties, must determine the standard of review, and therefore, it cannot be waived").

In any event, the Court need not resolve whether AEDPA applies to the misjoinder and ineffective assistance of counsel claims. As described below, those claims fail even on *de novo* review. As further described below, Butsinas' insufficiency of the evidence claim – which is subject to AEDPA because it was clearly decided on the merits – also fails.

### III

### A

The Court begins with Butsinas' claim that the state trial court violated his right to due process of law when the court joined for trial the criminal sexual conduct charges with the charges that he engaged in witness intimidation directed at the Dunns. In order to prevail on this claim, Butsinas must show that the joinder of the charges "result[ed] in prejudice so great as to deny [him] his [Fourteenth] Amendment right to a fair trial." *United States v. Lane,* 474 U.S. 438, 446 n. 8 (1986).

Butsinas argues that the joinder unfairly and severely prejudiced him because, if he had stood trial on the witness intimidation charges alone, his alleged criminal

sexual conduct would not have been admissible. (*See* Pet., ECF No. 1, PageID.17-18.)  In Butsinas' words, the conduct underlying his alleged witness intimidation "had little or nothing to do" with the alleged criminal sexual conduct, and thus "at most," a jury in a separate trial of the witness intimidation charges would have been told only that Butsinas had been accused "of a criminal offense." (*Id.*, PageID.19.) Butsinas argues that the jury's wrongful exposure to the inflammatory criminal sexual conduct allegations tainted its consideration of the witness intimidation charges. (*See id.*)

The theory of spillover prejudice that Butsinas invokes is well-recognized.  As the Sixth Circuit has explained, "a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007).  When charges are joined under these circumstances, "the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charged." *Id.*  "The prejudice that [a habeas petitioner claiming misjoinder] must demonstrate, however, in order to justify a grant of habeas corpus is *actual* prejudice, not merely the potential for prejudice." *Id.* (emphasis in original).

Butsinas has failed to show actual prejudice.  That is primarily because the premise from which his theory of prejudice proceeds – *i.e.*, that the witness

intimidation charges were unrelated to the criminal sexual conduct charges – is inaccurate. Indeed, the prosecution's theory of the case was that the conduct underlying the two sets of charges was related. For example, in the prosecution's opening statement, it told the jury that Butsinas made contact with the Dunns because he "had a lot to lose" from "the allegation[]" that he had "sexually assault[ed] an eight year-old." (3/11/2015 Trial Tr., ECF No. 10-10, PageID.368.) The prosecution then insisted that Butsinas acted out toward the Dunns as part of an effort "to make this all go away and have [Jason Dunn] not testify." (*Id.*) Likewise, in its closing argument, the prosecution contended that Butsinas confronted the Dunns because Margaret Dunn became "a witness" when she "took [the victim of the alleged sexual assaults] to the hospital," and Butsinas did not want her to provide "testimony" or "giv[e] information" in connection with the assaults. (3/17/2015 Trial Tr., ECF No. 10-13, PageID.876-877.) Simply put, the prosecution's theory was that Butsinas attempted to intimidate the Dunns in order to prevent one or both of them from providing evidence against him in court proceedings arising out of the alleged assaults. Under these circumstances, the witness intimidation charges bore a logical relationship to the criminal sexual conduct charges. *See, e.g., United States v. Carnes*, 309 F.3d 950, 957-58 (6th Cir. 2002) (holding that witness tampering charge was "intertwined with," and thus properly joined to, firearms and ammunition offenses where the alleged tampering involved an effort to influence testimony about

the firearms and ammunitions offenses); *United States v. Montgomery*, 358 F. App'x 622, 627-28 (6th Cir. 2009) (holding that witness tampering charge was "connected to," and properly joined with, drug offenses because the tampering was an effort to persuade a witness to change his testimony about the drug offenses).

Moreover, a second key premise of Butsinas' prejudice argument – *i.e.*, that no evidence of the alleged criminal sexual conduct would have been admissible in a separate trial of the witness tampering charges – is also incorrect.  Because the prosecution alleged that Butsinas tried to intimidate the Dunns to prevent them from testifying against him in matters arising out of the alleged assaults, some evidence that Butsinas committed the assaults would have been admissible to prove his motive in a standalone trial on the witness intimidation charges. *See, e.g., United States v. Scott*, 659 F.2d 585, 589 (5th Cir. 1981) (holding that evidence of tax offenses "would have been admissible in a separate trial [on witness intimidation charge alone] to show [the defendant's] motive in intimidating [a witness for the government on the tax charges]"); *United States v. Fagan*, 821 F.2d 1002, 1007 (5th Cir. 1987) (holding that evidence of mail fraud scheme "would have been admissible in separate trial for witness tampering to show [the defendant's] motive").  Indeed, "the weight of authority suggests that … evidence of the underlying offense is admissible to show a defendant's motive for engaging in witness tampering." *United States v. Cook*, 1995 WL 617642, at *3 (D. Kansas Oct. 19, 1995) (collecting cases).

10

Thus, the Court rejects Butsinas' argument that if the witness intimidation and sexual assault charges had been tried separately, no evidence concerning the alleged assaults would have been admissible in the witness intimidation trial.

Butsinas is likely correct, however, when he argues that if the witness intimidation charges had been tried separately from the criminal sexual conduct charges, the jury in the intimidation trial would not have heard as much detail about the alleged assaults. "Nevertheless, prejudice does not result automatically from a situation where some evidence not admissible in separate trial is admitted in a joint trial." *United States v. Carmichael*, 685 F.2d 903, 910 (4th Cir. 1982). In fact, "prejudice generally does not arise from joinder when the evidence of each crime is simple and distinct, even in the absence of cross-admissibility." *Bean v. Calderon*, 163 F.3d 1073, 1085 (9th Cir. 1998). And prejudice is less likely to arise when the jury is "instructed to give separate consideration to each count in the indictment." *United States v. Moya-Gomez*, 860 F.2d 706, 768 (7th Cir. 1988). That is because "a [properly-instructed] jury is presumed capable of considering each count separately." *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002).

Against this legal backdrop, Butsinas has not shown that he suffered serious unfair prejudice when the jury deciding the witness intimidation charges against him heard some evidence relating to the alleged sexual assaults that would not have been admitted in a trial on the witness intimidation charges alone. First, the evidence on

11

both sets of charges "was not complex," and thus "[t]here was little to no possibility that the jury could have been confused over which evidence related to which count." *Moya-Gomez*, 860 F.2d at 768. Second, the jury was instructed that it had to "consider each crime separately." (3/18/2015 Trial Tr., ECF No. 10-14, PageID.929.) Third, Butsinas has not cited a single case in which any court has found serious unfair prejudice under similar circumstances. In fact, Butsinas has not even cited a single case in which any court has addressed the joinder of witness intimidation charges with other charged offenses, much less a case in which any court has found that such a joinder caused a defendant severe prejudice.

For all of the reasons explained above, Butsinas has failed to persuade the Court that the joinder of the witness intimidation and sexual assault charges "result[ed] in prejudice so great as to deny [him] his [Fourteenth] Amendment right to a fair trial." *Lane,* 474 U.S. at 446 n. 8.

## B

Butsinas next claims that his trial counsel provided ineffective assistance when counsel failed to adequately impeach witnesses Margaret Dunn and Jason Dunn, the prosecution's chief witnesses on the witness intimidation charges.

Butsinas' ineffective assistance claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To show that he was denied the effective assistance of counsel under *Strickland*, Butsinas must satisfy a two-prong test. First,

he must demonstrate that, considering all of the circumstances, his counsel's performance fell below an objective standard of reasonableness. *See id.* at 689.  For this prong of the *Strickland* analysis, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*   Thus, Butsinas bears the burden of overcoming the presumption that a challenged action might be considered sound trial strategy. *See id.* Second, Butsinas must show that his counsel's deficient performance caused prejudice. *See id.*   To demonstrate prejudice, Butsinas must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different." *Id.* at 694.

Here, Butsinas first argues that his counsel should have used telephone records to impeach Margaret Dunn concerning one aspect of her testimony.  As described by the Michigan Court of Appeals in the excerpt quoted above, Dunn testified at trial that she accompanied the victim to the hospital and that while she was waiting for doctors to examine the victim, she (Dunn) overheard Butsinas speaking by telephone with Elizabeth Smith (the victim's mother and Butsinas' girlfriend).  Dunn testified that she heard Butsinas speaking to Smith for several hours and that during those calls, Butsinas threatened to harm the person that reported his alleged sexual abuse of the victim to authorities. (*See* Pet., ECF No. 1, PageID.24-29.)   Butsinas says that phone records would show only a brief

13

conversation between himself and Smith that night.  Butsinas insists that if his counsel had impeached Margaret Dunn with those records, it would have called into question her testimony that the phone conversation between himself and Smith went on for hours. (*See id.*)  Butsinas also argues that counsel failed to adequately impeach Dunn with previous statements Dunn made to police and with statements made by Smith. (*See id.*, PageID.25-26.)

Butsinas has not shown that he is entitled to habeas relief based upon counsel's purportedly-deficient impeachment of Margaret Dunn.  Butsinas has failed to show prejudice from the alleged lack of impeachment in two respects.  First, Butsinas' argument ignores the defense that he actually presented to the witness intimidation charges.  The defense was not that the account offered by Dunn was false.  Instead, the defense was that while his actions during his two visits to the Dunns' residence were *admittedly* "deplorable," "reprehensible," and had no place "in a civilized society," his conduct did not rise to the level of witness intimidation. (3/17/2015 Trial Tr., ECF No. 10-13, PageID.905.)  Because this was Butsinas' defense to the witness intimidation charges and because further impeachment of Dunn would not have bolstered this defense, it is not reasonably probable that any additional impeachment of Dunn would have changed the result at trial.

Second, even though Butsinas' defense to the witness intimidation charges did not rest upon impeaching Margaret Dunn, the record reveals that Butsinas'

lawyer both impeached Dunn on several points and elicited some helpful concessions from her, and Butsinas has failed to show a reasonable probability that additional impeachment of Dunn would have changed the result at trial. For example, counsel impeached Dunn with Kr's own testimony that Dunn told Kr that the reason she was at the hospital was to make sure that "proper questioning" occurred. (3/12/2015 Trial Tr., ECF No. 10-11, PageID.569-571). Counsel also impeached Dunn with Smith's statement that she never told Butsinas that someone had reported him to Child Protective Services ("CPS") even though Dunn testified that she overheard Butsinas threatening the person who had called CPS on him. (*See id.,* PageID.573-74). Finally, counsel impeached Dunn's testimony that she immediately told a deputy, while still at the hospital, that she overheard threats being made by Butsinas over the phone with evidence that the police reports lacked any mention of Dunn reporting the phone threats to the police. (*See id.*, PageID.578-579). Moreover, counsel obtained several helpful concessions from Dunn that could have been used to establish reasonable doubt as to the witness intimidation charges against Butsinas. Counsel had Dunn acknowledge, among other things, that:

- Butsinas never told her not to testify in this case. (*See id.*, PageID.571.);
- Butsinas never promised her that he would pay her not to testify. (*See id.*, PageID.572.);

- Butsinas never threatened to physically harm her if she testified. (*See id.*);

- Butsinas never said to her, "if you know what's good for you, you shouldn't testify." (*Id.*);

- Although she claimed to be afraid of Butsinas, she gave Butsinas her husband's cell phone number. (*See id.*);

- She had no "personal knowledge" concerning whether Butsinas had sexually abused Kr for five years. (*Id.*, PageID.575); and

- She acknowledged that if sexual abuse of the type that Kr testified to took place there should be some physical manifestations from the abuse. (*See id.,* PageID.575-576.)

For all of these reasons, given counsel's examination of Margaret Dunn, Butsinas has not shown a reasonable probability that the jury would have reached a different verdict if his attorney had impeached Dunn in the way he desired.

Butsinas is not entitled to federal habeas relief on his claim of ineffective assistance of counsel.[3]

---

[3] In the petition, Butsinas also asserts that his trial counsel "also failed to impeach Jason Dunn with his statement to police." (Pet., ECF No. 1, PageID.26.)   But Butsinas did not develop that argument.  The Court will not consider it.

# C

## 1

Finally, Butsinas claims that there was insufficient evidence to convict him of witness intimidation.  Butsinas raised this claim on direct review, and the Michigan Court of Appeals rejected it:

> Defendant contends that th[e] evidence was insufficient to support his convictions of intimidating witnesses Margaret and Jason Dunn. We review such challenges de novo, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the jury's verdict, to determine if a rational jury could find the elements of the offense established beyond a reasonable doubt. *People v. Pinkney*, 316 Mich. App. 450, 467–468, 891 N.W.2d 891 (2016).
>
> The prosecution charged defendant under MCL 750.122(3), which proscribes witness intimidation as follows:
>
> > A person shall not do any of the following by threat or intimidation:
> >
> > (a) Discourage or attempt to discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.
> >
> > (b) Influence or attempt to influence testimony at a present or future official proceeding.
> >
> > (c) Encourage or attempt to encourage any individual to avoid legal process, to withhold

testimony, or to testify falsely in a present or future official proceeding.

MCL 750.122(9) further provides:

This section applies regardless of whether an official proceeding actually takes place or is pending or whether the individual has been subpoenaed or otherwise ordered to appear at the official proceeding if the person knows or has reason to know the other person could be a witness at any official proceeding.

The intimidation of a witness in a judicial proceeding is associated with the common-law offense of obstructing justice. *People v. Vallance*, 216 Mich. App. 415, 419, 548 N.W.2d 718 (1996). The coercion of witnesses, an example of obstructing justice, "is complete with the attempt through threats and coercion to dissuade a witness from testifying." *People v. Tower*, 215 Mich. App. 318, 320, 544 N.W.2d 752 (1996). The crime requires a specific intent. *Id.* at 320–321, 544 N.W.2d 752. The defendant's acts or statements must be "unequivocally referable" to the crime. *Id.* at 321, 544 N.W.2d 752. However, there is "no talismanic requirement that a defendant must say, 'Don't testify' or words tantamount thereto." *Id.* at 322 (citation and quotation marks omitted). Rather, the totality of the circumstances must reasonably support an inference that the defendant intended to dissuade the person from testifying. *Id.* at 322–323, 544 N.W.2d 752.

The record evidence does not support that defendant intimidated Margaret Dunn during his telephone conversation with Smith while Smith was at the hospital with Kr. Neither Margaret nor Smith ever claimed that defendant was aware of Margaret's presence or realized that she could hear his end of the phone conversation. Moreover, defendant's statement did not refer to Margaret attending as a witness, testifying, or giving information at any proceeding. Rather, defendant threatened harm in retaliation for the past act of reporting the abuse to CPS.

18

Because the threat made by defendant while on the phone with Smith was not intended to discourage Margaret from testifying, his words cannot support a witness intimidation charge.

But the jury was entitled to infer that defendant's two appearances at the Dunn house, which included honking his horn, revving his engine, shouting, and demanding to speak to Jason Dunn, were intended to intimidate Margaret and to dissuade her from testifying. And a related event also supplies sufficient circumstantial evidence to qualify as witness intimidation. On one of the nights that defendant revved his car engine outside the Dunns' home, Jason Dunn went outside to confront him. Defendant had his phone out and was "videotaping [the Dunns'] home and all of [their] cars." When asked why he was doing that, defendant told Jason that the Dunns "messed with the wrong people this time, and that [they] were manipulators and [they] would not take other people's kids this time." Jason called the police, who eventually apprehended defendant and impounded his car. According to both Jason and Margaret, defendant again had no reason to be at the Dunn house. Viewed in the light most favorable to the prosecution, *Pinkney*, 316 Mich. App. at 467–468, 891 N.W.2d 891, this evidence sufficed to support defendant's witness intimidation convictions.

*Butsinas*, 2018 WL 521819, at ** 2–3 (internal footnote omitted).

## 2

The clearly established federal law governing Butsinas' sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt

19

of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially deferential in the habeas context. As the United States Court of Appeals for the Sixth Circuit recently explained, under AEDPA,

> a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:
>
> > First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

> *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060,
> 182 L.Ed.2d 978 (2012) (per curiam) (citations and
> internal quotation marks omitted).

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020).  *See also Brown v. Konteh*,

567 F.3d 191, 205 (6th Cir. 2009) (explaining that when analyzing a *Jackson* claim

on habeas review, a reviewing court "cannot even inquire whether any rational trier

of fact would conclude that petitioner [ ] is guilty of the offenses with which he was

charged. Instead, [the reviewing court] must determine whether the [state] Court of

Appeals itself was unreasonable in its conclusion that a rational trier of fact could

find [the petitioner] guilty beyond a reasonable doubt based upon the evidence

introduced at trial").

**3**

Butsinas has failed to show that the Michigan Court of Appeals' decision

denying relief on his sufficiency-of-the-evidence claim was contrary to, or

unreasonably applied, the clearly established federal law described immediately

above.  As the Sixth Circuit has recognized, "the testimony of a single witness is

sufficient to support a conviction." *United States v. Osborne*, 886 F.3d 604, 613 (6th

Cir. 2018) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)).

And a reviewing court "does not reweigh the evidence or redetermine the credibility

of witnesses . . . ."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "It

is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*.

Here, given the double layer of deference that the Court must apply on habeas review, the Court cannot say that the Michigan Court of Appeals unreasonably determined that the evidence presented at trial "sufficed to support [Butsinas'] witness intimidation convictions." As described above, the prosecution presented evidence that Butsinas came to the Dunns' home on at least two occasions, and that while at the Dunns' home he repeatedly honked his horn, revved his engine, shouted at the Dunns, and demanded to see Jason Dunn. Moreover, during one of the nights Butsinas came to the Dunns' home, he was observed videotaping the Dunns' cars and home, confronted Jason Dunn, and told him that the Dunns had "messed with the wrong people." In light of this evidence, the Court cannot conclude that it was unreasonable for the Michigan Court of Appeals to find sufficient evidence that Butsinas engaged in threatening or intimidating behavior directed toward Margaret Dunn.

The closer question is whether the prosecution presented sufficient evidence that Butsinas' threatening conduct was connected to any official proceeding. Butsinas says that the evidence on that score was insufficient because at the time he first visited the Dunns' house, he was not aware that his alleged sexual abuse had been reported to authorities – and thus was not aware that a criminal prosecution or

other official proceeding related to the abuse was even a possibility.  And Butsinas says his statements during his second visit to the Dunns' house were also not sufficiently connected to any criminal case.

But the Court cannot find that the Michigan Court of Appeals acted unreasonably when it found sufficient evidence connecting Butsinas' conduct to a "present or future" criminal case. Mich. Comp. Laws § 750.122(3).  Butsinas appeared at the Dunns' house and engaged in threatening behavior mere hours after Margaret Dunn reported his alleged abuse to CPS and took the victim to the hospital. (*See* 3/12/2015 Trial Tr., ECF No. 10-11, PageID.562-563.)  Before that visit, Butsinas had never been to Dunns' house and had never had any meaningful contact with Margaret Dunn. (*See id.*, PageID.568, 585, 587, 591.)  It was not unreasonable for the Michigan Court of Appeals to conclude that the jury reasonably could have inferred that Butsinas must have come to the Dunns' home because he had somehow learned about Margaret Dunn's actions and was anticipating criminal charges arising out of her report.  Indeed, it seems hard to come up with any other reasonable explanation as to why Butsinas would have shown up at the Dunns' house out of the blue and engaged in intimidating behavior at the time he did so.  Likewise, it was not unreasonable for the Michigan Court of Appeals to place some emphasis on Butsinas' statements that the Dunns' had messed with the wrong person.  The only way the Dunns had arguably "messed with" Butsinas was through Margaret's report

of his alleged abuse to authorities – a report that could naturally be expected to lead to criminal charges.

For all of these reasons, and applying the double-deference due to the Michigan Court of Appeals, the Court cannot conclude that that court unreasonably held that Butsinas' witness intimidation convictions were supported by sufficient evidence.

## IV

For the reasons stated above, the Court concludes that Butsinas is not entitled to federal habeas relief.  His petition for a writ of habeas corpus is therefore **DENIED**.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a certificate of appealability under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **GRANTS** Butsinas a certificate of appealability because jurists of reason could debate the Court's conclusion that he has failed to demonstrate an entitlement to habeas relief.

The Court also **GRANTS** Butsinas leave to appeal *in forma pauperis*. A court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764-65 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Here, an appeal could be taken in good faith. Therefore, Butsinas may proceed *in forma pauperis* on appeal.

V

Accordingly, for all the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Butsinas' petition for a writ of habeas corpus (ECF No. 1), (2) **GRANTS** Butsinas a certificate of appealability, and (3) **GRANTS** Butsinas permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated: February 9, 2023            UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 9, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126